IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. CV-02-TMP-1992-S |
| TWENTY-FOUR FIREARMS AND ASSORTED AMMUNITION, | ) |
| Defendants | ) |
| and | ) |
| POLLY FULLER, | ) |
| Claimant. | ) |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an *in rem* forfeiture action pursuant to 18 U.S.C. § 924(d), in which the Government seeks the forfeiture of twenty-four (24) firearms and assorted ammunition seized from a residence at 455 Ravine Road, Irondale, Alabama. The Government contends that the defendant firearms and ammunition were in the possession of a convicted felon, Jason Bearden, and thus contraband under §§ 922 and 924. The claimant, Polly Fuller, Jason Bearden's mother, claims the firearms, asserting that they belong to her, having been passed down to her as family heirlooms from her father, grandfather, and deceased husbands, and that they were not in Jason Bearden's possession when seized by the Government. Following the consent of the parties to allow the undersigned to exercise final dispositive authority pursuant to 28 U.S.C. § 636(c), a non-jury evidentiary hearing was conducted on November 6, 2003. On the basis of the testimony, stipulations, and evidence presented



at that time, the court makes the following findings of fact and enters the following conclusions of law.

## Findings of Fact

1. On March 26, 2002, agents of the Bureau of Alcohol, Tobacco, and Firearms executed a federal search warrant at 455 Ravine Road, Irondale, Alabama. That residence is a mobile home with a large add-on bedroom built onto the back. Although it is owned by claimant, the utilities to the residence are in Jason Bearden's name.

2. Jason Bearden was convicted of the felony offense of unlawful possession of a controlled substance in the Circuit Court of St. Clair County, Alabama, on October 1, 1992, for which he was sentenced to two years' probation. The State of Alabama pardoned Jason Bearden on October 21, 1998; however, the pardon expressly states that it does not restore Jason Bearden's right to own or possess firearms.

3. During the search, the following firearms were seized:

- Mossberg model 835, 12-gauge pump shotgun, serial number UM483847

- Winchester model 70, .270 caliber bolt-action rifle, serial number G2346898

- Rossi model 65SRC, .44 caliber lever-action rifle, imported as Interarms serial number M033945

- Savage model 110, .270 Winchester caliber bolt-action rifle, serial number F300888

- Remington model 11-48, 16-gauge semi-automatic shotgun, serial number 5577094

- Mossberg, 20-gauge pump-action shotgun, serial number K212161

- Springfield model 67 Series E, 12-gauge pump shotgun, serial number C542345

- Marlin model 336, 30-30 Winchester caliber lever-action rifle, serial number 01030213

- Luigi Franchi S.P.A.-DRESCIE (Made in Italy) model 48-AL, 12-gauge semi-automatic shotgun, serial number FF22044

- Mossberg model 500, 12-gauge pump-action shotgun, serial number L712867

- Norinco, Mak 90 Sporter, 7.62x39 caliber semi-automatic rifle, serial number 9384226 (imported by A.C.C. International-Intrac, Knoxville, Tennessee)

- 1939 Winchester model 70, bolt-action rifle, serial number YA6836

- Wards Western Field Model 158, .410 bolt-action shotgun (no serial number)

- Remington model 511 Scoremaster, .22 caliber bolt-action rifle (no serial number)

- Marlin Glenfield model 25, .22 caliber bolt-action rifle, serial number 71388879

- North China Industries single-shot pump shotgun, serial number M554397 (Made in Shangha, China)

- Winchester Squires Brigham model 20, .22 caliber semi-automatic rifle, serial number 838942 (Made in the Philippines)

- Mossberg model 185D-C, 20-gauge bolt-action shotgun (no serial number)

- Hi Point model 995, 9mm semi-automatic carbine rifle, serial number A09655

- Norinco model SKS, 7.62x39 semi-automatic rifle, serial number 1801998J (Imported by Polly USA).

- Marlin model 60, .22 caliber semi-automatic rifle, serial number 14441125

- Mossberg Riverside Arms, .410-gauge single shot shotgun (Chicoppe Falls, MA)

- Taurus model PT-101AF, .40 caliber semi-automatic pistol, serial number SKJ01642/AFD (Made in Brazil)

3

- US Revolver Company, 5-shot revolver, serial number 84650

4. During the search, the following ammunition was seized:

- 73 rounds of 12-gauge shotgun ammunition
- 19 rounds of .270 caliber ammunition
- 5 rounds of 7.62x39 caliber ammunition in a magazine
- 12 rounds of .40 caliber S&W ammunition
- 7 rounds of .338 caliber Winchester magnum ammunition
- 178 rounds of 7.62x39 caliber ammunition
- 40 rounds of 7.62x54 caliber ammunition
- 19 rounds of 16-gauge shotgun ammunition
- 65 rounds of 7.9 caliber ammunition
- 140 rounds of 9mm ammunition
- 74 rounds of .44 caliber ammunition
- 10 rounds of unknown caliber ammunition
- 4 rounds of .338 caliber ammunition
- 40 rounds of .38 caliber ammunition
- 20 rounds of .44 caliber specials ammunition
- 9 rounds of 20-gauge shotgun ammunition
- 4 Mak 90 magazines
- 41 rounds of .380 caliber ammunition
- 1 round of .357 magnum ammunition
- 1 round of 30-30 caliber ammunition
- 3 rounds of .40 caliber ammunition
- 30 rounds of .45 caliber ammunition
- 33 rounds of .22LR caliber ammunition

5. As a result of the search and seizures, Jason Bearden was indicted and convicted of possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g), and on June 4, 2003, he was sentenced to 63 months' custody. That conviction is currently on appeal.

6. All of the firearms and ammunition were found in the large, built-on bedroom on the back of the mobile home. Many of the guns were found in a locked, glass-front gun case or an open-front gun rack in that room. The Taurus .40 caliber pistol was found in the nightstand to the right of the

bed. The ammunition was found either in or attached to some of the firearms or in an "ammo box" in one of the two closets in the room. Gun-cleaning kits also were found in the room. The guns were found to be clean and in "good shape," although claimant denied cleaning the weapons or knowing how to clean them.

    7. At the time of the seizures, claimant was not residing at 455 Ravine Road, but at her daughter's house nearby on Hagbush Road. Claimant was ill and had been hospitalized, and had not been at the residence for five or six weeks. Claimant admits that Jason Bearden, her son, was living at 455 Ravine Road, although she stated that he slept in one of the bedrooms other than the large, built-on room, which she claimed as her room.

    8. Two closets were located in the large bedroom. The closet immediately to the right of the entrance was filled with a man's clothing, both hung neatly and stacked on the floor. The closet to the left of the entrance contained no clothing and appeared to be used as a "junk" storage space. It was filled with baby equipment and items, as well as several plastic "gun cases," all loosely and haphazardly stacked in it. No women's clothing, cosmetics, or personal effects were found in the room. Both the testimony and a video of the room revealed that it lacked a woman's touch or "feel."

    9. In addition to the firearms, ammunition, and men's clothing found in the room, Jason Bearden's 1998 pardon documents were found in the nightstand to the left of the bed. In the glass-front gun case was a souvenir "wanted" poster from Gatlinburg, Tennessee, bearing a photograph of Jason Bearden, and a hand-drawn poster of a naked woman on a motorcycle. Also in the room were hunting bows acknowledged to be Jason Bearden's.

    10. Some of the guns seized came to claimant as family heirlooms, inherited from her father and grandfather. During the period of time Jason Bearden was on probation, from 1992 to 1998,

these guns were stored at the home of claimant's brother, Bobby Carlisle. These family heirlooms, described as being two .22 caliber rifles and some old shotguns(not any ammunition or pistols), were returned to claimant when Jason was pardoned in 1998.

11. Claimant received fifteen of the firearms (not more specifically identified in the testimony) when her brother, Herbert Miller, died in 1991. Claimant also received two handguns as part of barter deals for automobiles, that is, she received the handguns as partial payment for automobiles she had for sale.

Conclusions of Law

The complaint in forfeiture in this action was filed pursuant to the authority of 18 U.S.C. § 924(d), which provides in relevant part as follows:

> (d)(1) **Any firearm or ammunition involved in or used in any knowing violation of subsection ... (g), ...of section 922**, or knowing importation or bringing into the United States or any possession thereof any firearm or ammunition in violation of section 922(l), or knowing violation of section 924, or willful violation of any other provision of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, or any firearm or ammunition intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, **shall be subject to seizure and forfeiture**, and all provisions of the Internal Revenue Code of 1986 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter: Provided, That upon acquittal of the owner or possessor, or dismissal of the charges against him other than upon motion of the Government prior to trial, or lapse of or court termination of the restraining order to which he is subject, the seized or relinquished firearms or ammunition shall be returned forthwith to the owner or possessor or to a person delegated by the owner or possessor unless the return of the firearms or ammunition would place the owner or possessor or his delegate in violation of law. Any action or proceeding for the forfeiture of firearms or ammunition shall be commenced within one hundred and twenty days of such seizure.

* * *

> (2)(C) Only those firearms or quantities of ammunition particularly named and individually identified as involved in or used in any violation of the provisions of this chapter or any rule or regulation issued thereunder, or any other criminal law of the United States or as intended to be used in any offense referred to in paragraph (3) of this subsection, where such intent is demonstrated by clear and convincing evidence, shall be subject to seizure, forfeiture, and disposition.
>
> (3) The offenses referred to in paragraphs (1) and (2)(C) of this subsection are--
>
>> (A) any crime of violence, as that term is defined in section 924(c)(3) of this title;
>>
>> (B) any offense punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.) or the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.);
>>
>> (C) any offense described in section 922(a)(1), 922(a)(3), 922(a)(5), or 922(b)(3) of this title, where the firearm or ammunition intended to be used in any such offense is involved in a pattern of activities which includes a violation of any offense described in section 922(a)(1), 922(a)(3), 922(a)(5), or 922(b)(3) of this title;
>>
>> (D) any offense described in section 922(d) of this title where the firearm or ammunition is intended to be used in such offense by the transferor of such firearm or ammunition;
>>
>> (E) any offense described in section 922(i), 922(j), 922(l), 922(n), or 924(b) of this title; and
>>
>> (F) any offense which may be prosecuted in a court of the United States which involves the exportation of firearms or ammunition. [Bolding added for emphasis].

In this case, Jason Bearden was charged with and convicted of knowing possession of the firearms and ammunition after having been previously convicted of a felony offense, all in violation of § 922(g). In the language of the statute, therefore, the forfeiture question is whether the specified firearms and ammunition were "involved in or used in any knowing violation" of § 922(g). Put

7

another way, did Jason Bearden having knowing possession of the firearms and ammunition at the time they were seized? The court is persuaded that he did, and that the firearms and ammunition are properly forfeitable.

The essential question present in this action is whether Jason Bearden was in possession of the firearms and ammunition at the time they were seized for the underlying offense on which the forfeiture is predicated as a violation of § 922(g). That part of federal firearms law makes it an offense for anyone "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or **possess in or affecting commerce**, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." [Bolding added for emphasis]. Possession can be either actual or constructive. "[A] party may be deemed to 'possess' a firearm under 18 U.S.C. § 922(g)(1) through either actual or constructive possession." United States v. Pedro, 999 F.2d 497, 500 (11th Cir. 1993). "[F]or a person to have constructive possession over a firearm, the person must have both 'the intent and the power to exercise dominion and control over the [firearm].'" Id. (quoting United States v. Smith, 591 F.2d 1105, 1107 (5th Cir.1979)).

Although ownership of firearms is claimed by Polly Fuller, Jason's mother, possession, rather than ownership, is the crux of the forfeiture issue. It is clear that at the time the firearms and ammunition were seized, and for some period of time before than, they were in the actual possession of Jason Bearden. As indicated in the Findings of Fact, Jason Bearded lived at the residence at which the firearms were located, but the claimant had not been there for five or six weeks before the seizure. Although Ms. Fuller contends that the large room in which the firearms and ammunition were located was her room, not Jason's, the evidence suggests otherwise. None of her clothing,

8

cosmetics, or medication were in the room, but Jason's clothing, hunting bows, and pardon papers were. Although Ms. Fuller suggested that her personal effects were not in the room because Jason was "doing work on" the room, that does not explain why his own clothing and personal effects were there. The videotape of the search of the room does not reveal either ongoing renovation work or the signs of work just completed. Indeed, if work had just been completed, why were Jason's belongings moved into the room before Ms. Fuller's, if, as she says, the room was hers and Jason did not live in it?

Some of the firearms were in an open gun rack, accessible to anyone in the house. Even those guns locked in the glass-front gun cabinet were stored with items more likely associated with Jason than his mother, specifically a souvenir "wanted" poster of him and a sketch of a naked woman on a motorcycle. Gun-cleaning kits were found in the room, and the guns themselves were clean and in "good shape" when seized by ATF agents, indicating that someone had regularly cleaned and taken care of the firearms. Because Ms. Fuller testified plainly that she had not cleaned the guns and, indeed, did not know how to clean them, the only logical conclusion to be reached is that Jason had done so. Moreover, at the time of the search, the glass-front cabinet was locked, but a key was located to unlock it. There is no evidence concerning where the key was found or from whom it was obtained, but the evidence is clear that it was not obtained from Ms. Fuller.

Some of the weapons themselves simply do not fit the mold of being family heirlooms, as claimant describes them. Found together with old shotguns and .22 caliber rifles were a Mak-90 Sporter semi-automatic rifle, more commonly known as an AK-47 assault rifle, another Norinco 7.62x39 assault rifle, a carbine rifle, and several high-caliber handguns. These weapons suggest the need for serious fire power, not collecting, hunting, or sport shooting, which is inconsistent with Ms.

9

Fuller's characterization that these guns came to her as heirlooms from her father, grandfather, brother, and husbands. Likewise, the type and amount of ammunition seized from the residence is evidence that the firearms were not merely family heirlooms or collector's objects. Ammunition that included four Mak-90 (AK-47) magazines and multiple rounds of assault-rifle ammunition makes clear that these were weapons that were available for use, not just collection. Further, the presence of the .40 caliber pistol in the nightstand clearly signifies that the weapon was placed there for self-defense, not merely for storage.

While it may be true that some of the old shotguns and .22 caliber rifles were handed down from relatives, mixed in among them were modern, high-powered assault weapons more likely to be possessed by a younger man like Jason, rather than an elderly woman who, by her own account, did not even know how to clean firearms. All of the weapons were, in fact, possessed by Jason and, thus, were "involved in or used in knowing violation of" § 922(g). Ms. Fuller testified that she believed that Jason's 1998 pardon eliminated the prohibition against him possessing firearms, and it was at that time that she retrieved the guns being stored for her by Mr. Carlisle. This erroneous belief is consistent with the fact that the weapons were found in a residence, in a room, used by Jason and under his actual control. Ms. Fuller assumed that Jason could possess firearms after being pardoned and, thereafter, Jason did possess them. He had both "the intent and the power to exercise dominion and control over" them.

The court finds that the Government has shown probable cause to believe that the specifically listed firearms and ammunition were "involved in or used in [a] knowing violation" of § 922(g), and that the claimant, Ms. Polly Fuller, has not rebutted that showing of probable cause. Consequently,

the firearms and ammunition are due to be forfeited to the Government. A separate order will be entered.

DONE this 20th day of April, 2004.

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE